IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL W. ADAMS,

       Plaintiff,      OPINION AND ORDER

    v.           09-cv-358-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   This is an action for judicial review of an adverse decision of the Commissioner of Social Security, denying plaintiff Michael W. Adams's applications for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(I), 423(d) and 1382(c)(3)(A). Plaintiff contends that the administrative law judge improperly evaluated the evidence regarding his need for special accommodations in the workplace, including the opinion of his examining physician, who had stated that plaintiff was incapable of maintaining employment independently because of his mental impairment. Plaintiff asserts that this error and the adjudicator's failure to develop the record further with respect to the accommodation issue led to an incorrect assessment of his residual functional capacity and past relevant work.

1

I am rejecting plaintiff's arguments and affirming the commissioner's decision. Although there is little doubt that plaintiff faces significant burdens in attempting to find and maintain steady employment in light of his limitations, substantial evidence supports the administrative law judge's conclusion that plaintiff retains the mental residual functional capacity to perform his past work as a dishwasher and a number of other unskilled positions existing in the regional economy. In sum, plaintiff has failed to adduce sufficient evidence to show that he was able to maintain his employment as a dishwasher for more than 20 years only with special accommodations.

The following facts are drawn from the administrative record (AR):

## FACTS

### A. Background

Plaintiff was born on July 1, 1961. AR 35. He graduated from high school but required special one-on-one tutoring and extra assistance. AR 64. Plaintiff worked as a dishwasher at Campus for Kids for 23 years. AR 617.

Plaintiff filed applications for disability insurance benefits and supplemental security income on January 19, 2006, alleging that he had been unable to work since January 13, 2006 because of a kidney transplant, diabetes and high blood pressure. AR 51, 125. After the local disability agency denied plaintiff's applications initially and upon reconsideration, plaintiff requested a hearing, which was held on October 15, 2008 before Administrative

2

Law Judge John H. Pleuss.  The administrative law judge heard testimony from plaintiff, AR 615-28, plaintiff's sister, AR 628-33, and a neutral vocational expert, AR 633-38.  On November 4, 2008, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 17-25.  This decision became the final decision of the commissioner on March 9, 2009, when the Appeals Council denied plaintiff's request for review.  AR 8-11.

## B. Former Employer Statements

Elizabeth Barden, the Director of Human Resources for Campus for Kids, submitted an undated report to Disability Determination Services.  When asked to describe any special working conditions that the agency provided for plaintiff, Barden stated that "he was able to set his own pace and set up his routine to be how he liked it."  She further stated that "[h]e was allowed to do things as he liked most of the time."  Barden reported that plaintiff was terminated because of budget constraints.  AR 98-99.

On August 15, 2006, plaintiff's supervisor at Campus for Kids reported in a telephone interview that plaintiff was not let go because of his disability.  The supervisor stated that plaintiff's work was not subsidized but that he was paid $9.98 an hour for work that was worth $8.50 an hour.  The supervisor also reported that although plaintiff learned things in a different way, he was independent and very responsible about his work, got along well with everyone and stayed on task.  AR 331-32.

3

On appeal, plaintiff submitted a  December 3, 2008 letter written by Susan C. Olsen, the Director of Campus for Kids, who stated:  "To allow him to fulfill the job's requirements, specific accommodations were made to offset his disabilities."  Olsen noted that he worked at his own pace and sometimes put in 16 hours to produce eight hours of work.  She confirmed that plaintiff's job was eliminated because of budget restrictions.  AR 610.

## C.  Medical Evidence

On October 19, 1998, plaintiff had a kidney transplant. AR 209.  He later developed steroid-induced type two insulin dependent diabetes mellitus and hypertension.  AR 138, 141.  Plaintiff was hospitalized from April 7 to 14, 2006 in a weak and disoriented state after he had stopped eating and discontinued his transplant rejection medication because he could not afford it. AR 199, 205.  Plaintiff was referred to Home Health Unified for nursing and social work services, which he began receiving on April 14, 2006.  AR 265-66.

On April 25, 2006, Dr. Jerry W. Halsten, Ph.D., performed a neuropsychological evaluation of plaintiff at the request of plaintiff's treating physician, Dr. Robert Alt.  Halsten performed two hours of clinical interviews, four hours of neuropsychological testing and a one-hour feedback session.  AR 263.  On May 19, 2006, Halsten wrote plaintiff a letter concerning his evaluation.  He stated that in his professional opinion, plaintiff's pervasive development disorder would likely prevent him from gaining competitive employment in the

4

future.  He indicated that plaintiff's significant delay in developing communication skills would make it difficult for him to interact with coworkers and supervisors effectively and that plaintiff's verbal learning and memory skills would make it difficult for him to learn a new job in a normal time period.  AR 247.

In a report dated May 25, 2006, Halsten noted that plaintiff had a 2003 diagnosis of mild mental retardation.  AR 257.  Halsten concluded that plaintiff had significant delays in communication and interpersonal relationship skills development.  Specifically, he noted that plaintiff had a history of life-long difficulties in social skill development and very limited development of reciprocal social interaction skills.  Halsten concluded that plaintiff had impaired memory retrieval, visuoconstructional deficits, impaired phonemic fluency, slowed graphomotor speed and very limited social knowledge.  AR 260-62.  He stated that plaintiff was "doing fairly well within the context of his job as a kitchen assistant and dishwasher at a daycare center for the past 24 years, as this provided him with a structured daily routine and a stable income."  AR 260.  Halsten noted that plaintiff's former employer was "quite flexible and understanding of his developmental delays."  AR 262.  He concluded that plaintiff was at a "severe disadvantage in terms of finding competitive employment without vocational assistance due to his very limited communication skills."  Id.  Halsten recommended vocational assistance in the areas of auditory verbal learning, verbal memory skills, fine motor dexterity, social judgment and communication.  He also stated that

5

plaintiff's disorder would prevent him from maintaining employment independently.  Id.

### D.  State Agency and Consulting Physicians

On March 14, 2006, state agency psychologist Roger Rattan completed a Psychiatric Review Technique form for plaintiff, finding that plaintiff had no medically determinable psychological impairment.  AR 184.

On August 24, 2006, state agency psychologist Michael Mandli completed a Psychiatric Review Technique on plaintiff, diagnosing pervasive development disorder.  He concluded that plaintiff had mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and one or two episodes of decompensation.

Mandli also completed a mental residual functional capacity assessment for plaintiff. He found that plaintiff was moderately limited in his ability to perform the following mental activities:  understand, remember and carry out very short and simple instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; get

6

along with coworkers or peers without distracting them or exhibiting behavior extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation.  AR 324-26.

On February 21, 2007, plaintiff underwent a consultative examination with Margaret Gretchen Byfield, Ph.D.  AR 344-51.  She reviewed Dr. Halsten's 2006 findings and noted that he was an excellent neuropsychologist who had completed a very comprehensive evaluation of plaintiff.  AR 344-45 and 350.  However, in discussing plaintiff's "stream of mental activity," Byfield wrote that she "did not observe some of the issues identified in the more extensive observational period with Dr. Halsten."  AR 347.

Dr. Byfield wrote that plaintiff was currently working with an agency called Placement Opportunities to assist him in his vocational endeavors.  She stated that "[t]his is an individual who however will require ongoing support and assistance in terms of his functioning in competitive employment and possible dealing with his financial concerns."  AR 350.  Byfield concluded that in the past, plaintiff had demonstrated his ability to perform work-related tasks, including understanding, remembering and carrying out simple instructions; maintaining concentration, attention and work pace on simple routine tasks; and withstanding routine work stressors when he knew what is expected of him.  She noted that plaintiff had no specific concerns about his ability to work with supervisors and

coworkers who knew him.  She explained that plaintiff would not do well in environments that require a significant change, high-level responsibility or working with the general public. AR 351.

### E.  Hearing Testimony

Plaintiff testified that he graduated from high school and went to Madison Area Technical College to obtain a food preparation assistant certificate.  AR 615.  He testified that, through an employment agency, he obtained a 20-hour a week, $8.00 an hour dishwashing job at a café.  AR 616.  He explained that he could set his own work pace and would be able to work full time, except that he would have trouble with his coworkers.  AR 621.  Plaintiff testified that he had worked as a dishwasher at Campus for Kids for 23 years until he lost that job because of downsizing.  AR 617.  He testified that he could work at his own speed at that job.  AR 619.

Plaintiff testified that he took medications for his kidney transplant, high blood pressure and diabetes.  AR 618-19.  He testified that he lived alone and did his own household chores,  AR 617, 622, that he had trouble managing his own money but could keep score at high school volleyball and basketball games,  AR 624, that he did not have a driver's license and that he walked for exercise.  AR 625, 627.

Next, plaintiff's sister, Cynthia Woodland, testified that plaintiff lacked social skills.

8

AR 629.  She testified that at Campus for Kids, which is the daycare center connected to the church that plaintiff attends, people worked with the skills that plaintiff possessed.  AR 630. She explained that plaintiff is a proud man and reluctant to talk about any difficulties he might have at work.  AR 632.

The administrative law judge then called Robert Verkins to testify as a neutral vocational expert.  AR 633.  Verkins testified that plaintiff had had two dishwasher positions which were unskilled light level work as he performed them but that The Dictionary of Occupational Titles would classify the typical dishwasher position as medium exertional work. AR 635.

The administrative law judge asked Verkins to consider an individual of plaintiff's age, education and work history with the following limitations:  the ability to perform medium level work; a limited but satisfactory ability to relate to coworkers, interact with supervisors, maintain attention and concentration, relate appropriately in social situations, complete a normal workday and work week without interruptions from psychologically based symptoms or unreasonable rest periods and understand, remember and carry out simple instructions; seriously limited but not precluded from dealing with the public and work stresses and responding appropriately to changes in the work setting; and no useful ability to understand, remember and carry out detailed or complex instructions.  AR 635.  Verkins testified that such an individual could perform plaintiff's past work and the following medium exertional

9

jobs in Wisconsin: dishwashing jobs (5,000), food processing jobs (8,200), assembly jobs (22,000), production inspection jobs (900), machine feeder jobs (5,500) and packaging jobs (3,000). He also testified that such an individual could perform light exertional work, including 13,000 cleaning jobs, 11,000 food processing jobs, 1,500 laundry jobs, 6,700 hand packaging jobs, 16,000 machine feeding jobs, 4,600 production inspection jobs and 23,000 industrial assembly jobs. AR 636. When the administrative law judge asked Verkins whether his testimony "differed from information in the <u>Dictionary of Occupational Titles</u>," Verkins said he could not. AR 636.

On cross examination, plaintiff's lawyer asked Verkins to assume that the individual in the hypothetical also would need supported or accommodated employment. Verkins testified that all of the competitive jobs that he had identified would be eliminated by such a restriction. Verkins also testified that if the individual was not able to work at a competitive work pace, he would not be able to perform competitive work. AR 637-38.

## F. <u>Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since January 13, 2006, his alleged onset date. AR 19. At step two, he found

10

that plaintiff had the severe impairments of pervasive development disorder and renal disease with a history of kidney transplant and side-effects from steroids, including diabetes mellitus.  At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 20.  Specifically, he found that plaintiff's mental impairment did not meet or equal a listed impairment because plaintiff had only mild difficulties in the activities of daily living and social functioning; moderate difficulties in maintaining coordination, persistence and pace; and one or two episodes of decompensation.  AR 21.

The administrative law judge determined that plaintiff retained the residual functional capacity to lift up to 50 pounds and frequently lift 25 pounds; had a limited but satisfactory ability to relate to coworkers, interact with supervisors, maintain attention and concentration, relate appropriately in social situations, complete a normal workday and work week without interruptions from psychologically based symptoms or unreasonable rest periods and understand, remember and carry out simple instructions; was seriously limited in but not precluded from work requiring dealing with the public and work stresses and responding appropriately to changes in the work setting; and no useful ability to understand, remember and carry out detailed or complex instructions.  The administrative law judge concluded that plaintiff's statements concerning the intensity, persistence and limiting

11

effects of his symptoms were credible only to the extent they were consistent with the residual functional capacity he had identified.  AR 22-23.

At step four, the administrative law judge found that plaintiff was able to perform his past work as a dishwasher.  In the alternative, at step five, the administrative law judge relied on the vocational expert's testimony in finding that there were numerous light and medium exertional jobs that plaintiff could perform in Wisconsin.  He found no conflict between the expert's testimony and the <u>Dictionary of Occupational Titles</u>.  AR 24.

OPINION

A.  <u>Legal Framework</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a

12

claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A). As mentioned previously, a claim of disability is determined under a sequential five-step analysis.  20 C.F.R. §§ 404.1520, 416.920.  At issue in this case is the administrative law judge's findings at steps four and five.  The inquiry at these steps requires an assessment of the claimant's "residual functional capacity," which is the "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  Social Security Ruling 96-8p.  See also 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her

13

limitations.").  A regular and continuing basis means "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p.  With respect to mental limitations, SSR 96-9p explains that the following "mental activities are generally required by competitive, remunerative, unskilled work:"  understand, remember and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  See also SSR 85-16, 85-15.

At step four, the commissioner compares the claimant's residual functional capacity to the physical and mental demands of the claimant's past relevant work to determine whether he can still do that work.  §§ 404.1520(iv); 416.920(iv).  Past work experience is considered relevant if it lasted long enough for the individual to learn how to do it and was substantial gainful activity.  §§ 404.1565(a); 416.965(a).  Work performed under "special conditions" may not constitute substantial gainful activity.  §§ 404.1573(c); 416.973(c).  Examples of special conditions include:  needing assistance from other employees to perform work; being assigned work especially suited to the impairment; being allowed to work at lower efficiency or productivity standards than other employees; and having the opportunity to work only because of past association with employer or employer's goodwill.  Id.

If the claimant can perform his past relevant work, then he is not disabled.  If he cannot perform his past relevant work, then the commissioner moves to the last step of the

14

sequential evaluation and assesses whether the claimant can make a vocational adjustment to other work in the economy in light of his age, education, work experience and residual functional capacity.  §§ 404.1520(v); 416.920(v).  The claimant bears the burden of proof at step four, but the burden shifts to the commissioner at step five.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

Plaintiff asserts that in determining his residual functional capacity and the relevancy of his past work as a dishwasher, the administrative law judge failed to consider that plaintiff cannot maintain competitive employment without special accommodation of his mental impairment.  Plaintiff relies on two pieces of evidence to support his position:  the opinion of his examining physician, Dr. Halsten, and statements from his former employer.

## B.  Halsten's Opinion

Because Halsten is not a "treating physician" under 20 C.F.R. § 404.1527(d)(2), his opinion is not entitled to controlling weight.  However, the regulations require that the opinion of an examining physician be given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(1).  Nonetheless, an administrative law judge is not bound by an examining physician's opinion and must evaluate it the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as a whole and other explanations regarding the opinion.  Haynes v. Barnhart,

416 F.3d 621, 630 (7th Cir. 2005); 20 C.F.R. § 404.1527(d) and (e).  An administrative law judge can reject an examining physician's opinion if his reasons for doing so are supported by substantial evidence in the record.  Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).  When the record contains well supported contradictory evidence, even a treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh."   Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006); 20 C.F.R. § 404.1527(d)(2).  Opinions from physicians "who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  SSR 96-6p.  The final decision about whether plaintiff is disabled is a legal one to be made by the administrative law judge; if the administrative law judge's resolution of conflicts in the medical evidence is reasonable, it is not subject to review.  Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1989); see also Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1989) (determination of claimant's limitations is decision reserved to Social Security Administration, which must consider entire record and not only physicians' opinions).

The administrative law judge gave good reasons for discounting Halsten's opinion, explaining that he did not find it persuasive because plaintiff had successfully maintained regular employment for many years and was able to work independently, stay on task and

16

get along with his coworkers.  The adjudicator also relied on the opinion of Dr. Byfield, a consultive physician who examined plaintiff and concluded that plaintiff had demonstrated his ability to perform simple, routine work tasks without difficulty.  The administrative law judge noted that Byfield's opinion was consistent with that of the state agency physicians, who found that, at most, plaintiff had moderate limitations in his ability to meet the mental demands of unskilled work.  Finally, plaintiff's own testimony supported the conclusion that he could perform full-time, competitive work.   These findings are well-founded and supported by substantial evidence in the record.

Plaintiff asserts that the administrative law judge ignored Byfield's statement that plaintiff would require ongoing employment support and assistance.  However, Byfield's general statement provides little support for plaintiff's contention that he is unable to work absent special accommodations.  The fact that plaintiff might need ongoing support and assistance does not necessarily rule out all competitive employment.  Byfield questioned plaintiff's ability to engage in work only if it involved significant changes, high levels of responsibility or dealing with the general public.  The administrative law judge appropriately accounted for these limitations in his residual functional capacity assessment.

Finally, plaintiff criticizes the administrative law judge for relying on the fact that he did not testify that he worked under special conditions.  Plaintiff points out that his sister testified that he is proud and would not admit to the need for special accommodation.

17

However, even if that is the case, plaintiff simply failed to adduce sufficient evidence of what specific accommodations he required.  Plaintiff suggests that the administrative law judge should have developed the record further with respect to his need for accommodations. However, as previously explained, it is plaintiff who has the burden of showing the extent of his limitations and the nature of his past relevant work.  "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."  Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994).

In sum, I cannot say that the administrative law judge applied the regulations improperly or drew illogical conclusions from the evidence when he discounted Halsten's opinion about plaintiff's need for special accommodations.

### C.  Former Employer Statements

In arguing that the administrative law judge ignored evidence that his past work was accommodated, plaintiff also relies on statements made by Elizabeth Barden, the human resources director for his former employer.  Although Barden stated that plaintiff set his own pace and routine as a dishwasher and was allowed to do things as he liked, neither she nor plaintiff's former supervisor identified any special conditions that plaintiff required to perform his work.  There is no evidence in the record that plaintiff required assistance from other employees, received special assignments or worked at a slower pace than other

18

employees.  §§ 404.1573(c); 416.973(c).  In fact, plaintiff's former supervisor stated that plaintiff was independent and very responsible, got along well with everyone, stayed on task, did not hold a subsidized position and was terminated because of budget constraints and not because of his performance or his impairment.

I note that in a 2008 letter, the director of Campus for Kids indicated that plaintiff was given special accommodations.  However, as plaintiff concedes, that letter was not in the administrative record and therefore could not have been considered by the administrative law judge in making his decision.  Accordingly, this court may not consider it.  Eads v. Secretary of Dept. of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that was before him").  Further, there is no basis for remanding this case pursuant to sentence six of § 405(g) because plaintiff has made no attempt to show that good cause existed for the letter's omission from the record, that the evidence was not in existence or available to plaintiff at the time of the hearing or that there is a reasonable probability that the commissioner would have reached a different decision had the evidence been considered.  Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) (explaining requirements for remand for consideration of additional evidence under sentence six of § 405(g)).

19

D.  Conclusion

From the evidence before him, the administrative law judge could reasonably infer that plaintiff's past work as a dishwasher at Campus for Kids was not accommodated employment and that he retained the residual functional capacity to perform his past relevant work.  Plaintiff seems to question the administrative law judge's reliance on plaintiff's current employment as a part-time dishwasher, a job that he obtained through the Department of Vocational Rehabilitation.  However, the administrative law judge specifically found that plaintiff's current earnings were insufficient to represent substantial gainful activity, making plaintiff's current position not past relevant work.  I note that the administrative law judge did state that the part-time position strongly suggested that plaintiff had the ability to perform full-time work.  However, the administrative law judge could reasonably infer that plaintiff did not work more because he did not want to or because part-time work was all that was available.  20 C.F.R. §§ 404.1571; 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

In any event, even if the administrative law judge erred in somehow improperly considering plaintiff's current part-time work at step four, this error was harmless because he proceeded to step five and found that plaintiff could perform numerous other jobs available in the regional economy.  Plaintiff asserts that in making this determination, the

20

administrative law judge relied improperly on the vocational expert's response to a hypothetical that failed to include the limitations that plaintiff could not work at a competitive pace.  However, only those limitations supported by the medical evidence in the record must be incorporated into the hypothetical.  Young, 362 F.3d at 1001-02; Steele, 290 F.3d at 492.  The administrative law judge posed a hypothetical incorporating the limitations found in his residual functional capacity assessment.  Because I have found that the administrative law judge did not err in making that assessment, the hypothetical that he posed to the vocational expert was proper.  The decision of the administrative law judge will be affirmed.


## ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Michael W. Adams's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 23rd day of February, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

21